ESSEX COUNTY COURT OF COMMON PLEAS.

IN THE MATTER OF NICHOLAS CASEMENTO, PAROLEE.

Decided October 28, 1945.

For the State of New Jersey, *Duane E. Minard, Jr.,* and *C. William Caruso.*

For the defendant, *Doane K. Reagan.*

HARTSHORNE, C. P. J. One Nicholas Casemento is in the custody of Pennsylvania parole officers, in the State of New Jersey, as a parolee, permitted to leave Pennsylvania on parole, under the "Interstate Compact for the Supervision of Out-of-State Parolees and Probationers" (*R. S.* 2:199–13; *N. J. S. A.* 2:199–13; *Pennsylvania, Laws* 1937, *ch.* 415; 61 *P. S.,* §§ 321, 322; *New York, Laws* 1936, *ch.* 388; *Correction Law* ; *Consol. Law, ch.* 43, § 224), who has violated the conditions of his parole. He applies for a writ of *habeas corpus,* to test the right of custody of these officers, with whom

the authorities of both New Jersey and New York are in fact co-operating. No question is raised as to the constitutionality of the above compact, to which not only the States of New Jersey, New York and Pennsylvania are party, but some three-fourths of the rest of the states of the Union as well, such constitutionality having already been passed on in all aspects in the case of *Ex parte Joseph Tenner,* 20 *Cal.* (2d) 670; 128 *Pac. Rep.* (2d) 338, the which decision was thereafter impliedly affirmed by the United States Supreme Court (314 *U. S.* 585; 62 *S. Ct.* 409; 317 *U. S.* 597; 63 *S. Ct.* 151). The objection raised by the applicant is as to the binding effect of the waiver agreement, signed by him, as a condition of his being paroled from custody by Pennsylvania.

After Casemento was convicted and imprisoned in Pennsylvania, he applied for a parole, and to be granted the privilege of leaving Pennsylvania, to go to Jamestown, New York, to live there with his mother. At the time of granting his parole application, and permitting him to reside in New York State, "to be supervised by the New York parole authorities," the Pennsylvania authorities required Casemento to execute a written agreement that "in consideration of being granted a parole * * * and especially being granted the privilege to leave the State of Pennsylvania and go to New York State," he would not only live with his mother in New York State, and abide by the parole regulations of both states, but "return at any time to the State of Pennsylvania" when instructed by New York State, and, "(4) That I hereby do waive extradition to the State of Pennsylvania, and also agree that I will not contest any effort to return me to the State of Pennsylvania. (5) Failure to comply with the above will be deemed to be a violation of the terms and conditions of parole for which I may be returned to the State of Pennsylvania."

Thereafter Casemento was paroled, went to New York State, but shortly violated his above agreement, by going to New Jersey, where he was arrested on a new charge. On being advised of his arrest, the Pennsylvania authorities applied to the New Jersey authorities for his return to Pennsylvania, under the compact and the prisoner's above agreement, New York joining in such application.

The beneficent purpose, both to the prisoner and the public, of the Interstate Compact for the Supervision of Out-of-State Parolees and Probationers, is clear. The rehabilitation of a convicted man obviously benefits all concerned. If without danger to the public, this rehabilitation can, of course, be accomplished better without, than within, prison walls, and through employment in the neighborhood of one's family, rather than in idleness amongst strangers, these being the very conditions stated by the compact. Furthermore, retaining the state's supervision over the prisoner's activities, wherever he may go, is clearly helpful, both to the public and the prisoner. This the compact alone can satisfactorily secure by making each state a supervising agent for the other. Indeed, not only the practical purpose of the compact, but the simplicity of its procedure, as to both the supervision of the parolee or probationer and his possible return, are clear.

Turning to the above waiver agreement, signed by the applicant, we must bear in mind that the time-worn procedure for returning from one state to another, one wanted by the authorities of that other, is ordinarily by the technical procedure of extradition, under the federal constitution (article I, section 10), the provisions of the federal statute (18 *U. S. C. A.*, § 662), and those of the Uniform Extradition Act, as enacted in New Jersey (*R. S.* 2 :185–6, as amended *Pamph. L.* 1940, *ch.* 259; *N. J. S. A.* 2 :185–6, *et seq.*). We must further bear in mind that, in any such removal, there are three parties involved, the demanding or sending state (here Pennsylvania), the asylum or receiving state (here New Jersey, and, under the unusual circumstances of this case, New York as well), and the prisoner himself.

As to the states, the compact itself clearly makes the procedure on extradition inapplicable, and the compact procedure applicable, by its provision that, "All legal requirements to obtain extradition of fugitives from justice are hereby waived on the part of states party hereto, as to such persons." The compact authorizes the "officers of a sending state [to] enter a receiving state and there apprehend" the prisoner, it being further provided that on his apprehension "no formalities will be required other than establishing the authority of the

officer and the identity of the person to be retaken." But it is questionable whether, on the face of the compact alone, the individual himself cannot insist upon formal extradition. Consequently, the Pennsylvania authorities had Casemento execute the above waiver agreement.

The specific question raised as to the binding effect of such agreement, and as a result whether Pennsylvania should not pursue the extradition rather than the compact procedure, is the claim that defendant cannot thus bindingly waive his constitutional rights in advance. In the first place, since the purpose of the extradition clause in the federal constitution (article IV, section 2 was to guaranty to the states the return of fugitives from justice, not to afford criminals "any immunity or protection from trial and punishment for any offenses committed in the state from which they flee" (*Lascelles* v. *Georgia*, 148 *U. S.* 537, 542; 13 *S. Ct.* 687, 689), it is questionable whether a fugitive has constitutional, as distinguished from statutory, rights to be returned on extradition, rather than by some other procedure.

But in any event, the law is clear that constitutional rights can be waived. Even the basic and fundamental right to a trial by jury can be waived, both under the federal and state constitutions. *Patton* v. *United States*, 281 *U. S.* 276; 50 *S. Ct.* 253; *Adams* v. *United States*, 317 *U. S.* 269; 63 *S. Ct.* 236; *State* v. *Stevens*, 84 *N. J. L.* 561; 87 *Atl. Rep.* 118. Similarly may an accused waive his constitutional right, under the federal and state constitutions, to the assistance of counsel. *Moses* v. *United States*, 129 *Fed. Rep.* (2d) 279; *certiorari denied*, 317 *U. S.* 665; 63 *S. Ct.* 73; *Adams* v. *United States, supra; State* v. *Murphy*, 87 *N. J. L.* 515; 94 *Atl. Rep.* 640. Of course, practically every waiver operates *in futuro*. And here in fact the consideration for Casemento's waiver—his freedom on parole—continued up to the very time of his arrest, the cause of his present application.

Thus, were Casemento under arrest in New York, rather than New Jersey, the right of the Pennsylvania authorities to proceed under the compact would be clear. But the further question is raised that, since he is under arrest in New Jersey, which is neither the sending nor receiving state men-

tioned by name in his waiver agreement, neither Pennsylvania nor New Jersey can return him to Pennsylvania under the compact, but, if at all, only by extradition. However, his waiver agreement does provide, as to the prisoner, not only that he "waive extradition to the State of Pennsylvania" but also that he "will not contest any effort to return me to the State of Pennsylvania." And the compact itself not only waives extradition on the part of all states party to the compact, but further provides "that the duly accredited officers of the sending state (Pennsylvania) will be permitted to transport prisoners being retaken through any and all states parties to this compact without interference," *i. e.,* that New Jersey will not interfere with Casemento's being transported on his retaking. It was thus the intent of the compact for all states party thereto to co-operate with each other in the return of parolees or probationers who had been granted privileges under the compact. As to the prisoner, true, it might have been clearer had his waiver agreement stated that he would not contest any effort "by any state" to return him to Pennsylvania. For this would have covered not only all states party to the compact, but all states which had enacted the waiver provisions of the Uniform Extradition Act, as has New Jersey. *R. S.* 2:185–30; *N. J. S. A.* 2:185–30. But since the prisoner himself agreed, for good consideration, not only to waive extradition to Pennsylvania, but not to contest *any* effort to return him thereto, he has no right to contest the present effort, made by officers of the state which granted him the privilege of leaving their cutody, on the express condition of his returning when wanted, this return being in fact with both the legal and practical co-operation of both the receiving state—New York—and the state where he had gone, without right, and had been arrested—New Jersey.

Since the above facts, upholding the lawful custody of the prisoner by the Pennsylvania authorities, under the Interstate Compact, all appear without controversy on the prisoner's application for the writ of *habeas corpus,* such application will be denied, such authorities then being at liberty to return Casemento to Pennsylvania.