THE PEOPLE OF THE STATE OF NEW YORK ex rel. HARRY RANKIN, Appellant, against HERMAN J. RUTHAZER, as Warden of City Prison, Borough of Manhattan, City of New York, Respondent.

Argued June 5, 1952; decided July 15, 1952.

*Joseph Lonardo* for appellant. I. If the sentence had been fully served when the Michigan board made the " decision " to " retake " relator, he was no longer on " parole ", and the board was *functus officio,* shorn of power to make the " decision " altogether. A construction that the compact precludes inquiry in this forum whether, under Michigan law, the balance of the sentence had been served, abrogates habeas corpus, or

impairs its efficiency; and also denies due process and equal protection. (U. S. Const., art. I, § 9; 14th Amendt.; N. Y. Const., art. I, §§ 4, 6, 11; *People ex rel. Hutchings* v. *Mallon,* 218 App. Div. 461, 245 N. Y. 521; *State ex rel. Treseder* v. *Remann,* 78 A. L. R. 412; *Ex Parte Tenner,* 20 Cal. 2d 670; *State ex rel. Sanders* v. *Robinson,* 190 Tenn. 101; *People ex rel. Newton* v. *Twombly,* 228 N. Y. 33; *People ex rel. Higley* v. *Millspaw,* 281 N. Y. 441; *People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176, 188 U. S. 691; *Innes* v. *Tobin,* 240 U. S. 127.) II. Basically, the limit of a parole board's power coincides with the expiration of the maximum term once it has been served; and where a board attempts recapture beyond that, the court computes the time owed, if any, and in a proper case declares the reimprisonment illegal. (*Anderson* v. *Corall,* 263 U. S. 193; *People ex rel. Ingenito* v. *Warden & Agent of Auburn Prison,* 267 App. Div. 295, 293 N. Y. 803; *People ex rel. Dote* v. *Martin,* 294 N. Y. 330.) III. The provisions of the habeas corpus act are *not limited* to a detention under process of this State's tribunals, nor do they differentiate between a formal or informal extradition. That being so, they manifestly apply to any person in custody not specifically excluded, as the traditional scope of the writ demands — a remedy that except in named national emergencies is placed " beyond the pale of legislative discretion ". (*People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559; *Frank* v. *Mangum,* 237 U. S. 309; *Hoff* v. *State of New York,* 279 N. Y. 490; *People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176; *People ex rel. Carollo* v. *Brophy,* 294 N. Y. 540; *People ex rel. Scharff* v. *Frost,* 198 N. Y. 110.) IV. The material allegations of the petition, standing undenied, are deemed true for present purposes. (*Matter of Hines* v. *State Bd. of Parole,* 293 N. Y. 254; *People ex rel. Dote* v. *Martin,* 269 App. Div. 59, 294 N. Y. 330.)

*Frank S. Hogan,* District Attorney (*Chester E. Kleinberg* and *Richard G. Denzer* of counsel), for respondent. The writ of habeas corpus was properly dismissed. (*State ex rel. Nagy* v. *Alvis,* 87 Ohio App. 251, 152 Ohio St. 515; *Gulley* v. *Apple,* 213 Ark. 350; *Pierce* v. *Smith,* 31 Wn. [2d] 52; *Ex Parte Tenner,* 20 Cal. 2d 670; *People ex rel. Marshall* v. *Moore,* 167 App. Div. 479, 217 N. Y. 632; *Biddinger* v. *Commissioner of Police,* 245 U. S. 128.)

DESMOND, J. New York State has outstanding (see list as of February 6, 1947, in supplement to McKinney's Cons. Laws of N. Y., Book 10–B, Correction Law) " Interstate Parole Compacts " with thirty-eight of the other States of the Union. Michigan since 1937 and New York since 1944 have been signatory to the compact, pursuant to section 224 of our Correction Law, the pertinent part of which is as follows:

" § 224. *Compacts with other states for out-of-state parolee supervision.*

" 1. The governor is hereby authorized and directed to enter into a compact on behalf of the state of New York with any state of the United States legally joining therein in the form substantially as follows:

## A COMPACT

" Entered into by and among the contracting states, signatories hereto, with the consent of the Congress of the United States of America, granted by an act entitled ' An act granting the consent of Congress to any two or more states to enter into agreements or compacts for co-operative effort and mutual assistance in the prevention of crime and for other purposes.'

" The contracting states solemnly agree:

" (1) That it shall be competent for the duly constituted judicial and administrative authorities of a state party to this compact (herein called ' sending state ') to permit any person convicted of an offense within such state and placed on probation or released on parole to reside in any other state party to this compact (herein called ' receiving state ') while on probation or parole, if

" (a) Such person is in fact a resident of or has his family residing within the receiving state and can obtain employment there;

" (b) Though not a resident of the receiving state and not having his family residing there, the receiving state consents to such person being sent there.

" Before granting such permission, opportunity shall be granted to the receiving state to investigate the home and prospective employment of such person.

"A resident of the receiving state, within the meaning of this section, is one who has been an actual inhabitant of such state continuously for more than one year prior to his coming to the sending state and has not resided within the sending state more than six continuous months immediately preceding the commission of the offense for which he has been convicted.

"(2) That each receiving state will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees.

"(3) That duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state; provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense.

"(4) That the duly accredited officers of the sending state will be permitted to transport prisoners being retaken through any and all states parties to this compact, without interference."

The following facts are undisputed in this habeas corpus proceeding. In August, 1939, this relator was convicted, in Michigan, of the crime of robbery and was sentenced to a term of from ten to thirty years. At the time of that conviction he was under indictment in New York County for the crime of murder in the first degree. In December, 1945, he was paroled from prison in Michigan for delivery to the New York authorities on that murder charge. The Michigan Parole Board order contained a proviso or condition, of which relator was informed,

that if the New York murder charge should be dropped, the New York authorities were to notify the Michigan authorities so that a parole, in New York, on the Michigan sentence could be arranged, pursuant to the " Interstate Compact " (*supra*). The murder indictment was dismissed in New York in May, 1947, but, responsive to a request from the Michigan authorities, the New York authorities detained relator. In August, 1947, there was granted to relator by the Michigan parole authorities a parole by the terms of which he was allowed to remain at liberty, not in Michigan, but in New York. Among the conditions of that parole, agreed to by relator, were these: that relator was to be employed by a named New York company and to be supervised by a named New York parole department employee. That Michigan parole, by its terms, was not to terminate before May 27, 1951, but it provided, as do all such paroles, that it was subject to the condition that relator would keep and observe all lawful parole provisions imposed by the Michigan Parole Board.

In March, 1950, the State of Michigan issued a warrant for the arrest of the appellant as a parole violator, declaring him " delinquent " as of February, 1950. In other words, Michigan, asserting that relator had violated his parole in February of 1950, issued a warrant demanding that he be arrested in New York and returned to Michigan, pursuant to subdivision (3) of the compact in section 224 of the Correction Law above quoted. Relator then sued out this writ of habeas corpus, and it came on for a hearing at Special Term. Relator now argues, among other things, that he has been denied his right to habeas corpus, but it is clear from these papers that a writ of habeas corpus was issued to him and that he had a hearing thereon, at which he was represented by counsel, and the whole situation explored. The only real dispute was as to what issues could be tried out on the hearing of that writ.

We point to the second sentence of subdivision (3) of the compact in section 224 above quoted: " For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken." At the Special Term hearing in this case, those two facts were expressly conceded by relator. That was really the end of the case, since at that point relator had had his full habeas corpus rights.

Relator, however, insisted at the hearing and still insists, that under the law of Michigan appropriate to the case, his full sentence in Michigan had, for all purposes, expired at the end of 1949, about two months prior to the alleged delinquency date in February, 1950. Special Term ruled that question was one to be decided in Michigan and not in New York.

Appellant's first point is that under the Uniform Criminal Extradition Act (an entirely different statute) which is in effect in Michigan as well as in New York (see Mich. Stat. Ann., § 28.1265, and our Criminal Code, § 829 *et seq.*); a fugitive from justice is entitled to a writ of habeas corpus. But that assertion does not help us decide this case, since this relator has been heard on the return of a habeas corpus writ.

Under the Uniform Criminal Extradition statute, when extradition is sought on the ground that a person accused of crime in another State is here as a fugitive from justice, it need only be shown that the person detained is the same person sought, and that he was in the demanding State at the time of the crime. Similarly, under the uniform " Interstate Parole Compact " law (*supra*), when the return to the demanding State is sought of an alleged parole violator, it need only be shown that he is the same person described in the papers, and that the officers from the demanding State are authorized persons. Those facts were conceded here. Relator argues that the procedure followed here violates section 9 of article I of the Federal Constitution prohibiting the suspension of the writ of habeas corpus, and violates, also, the Fourteenth Amendment of that Constitution as to due process and equal protection of the laws, and, further, that there was here violated the habeas corpus, due process and equal protection of law guaranties found in article I of our State Constitution. We find no such violation.

Relator's main complaint is that the question as to whether his parole time was expired, under the facts and the Michigan law, was not tried out in this proceeding. But the language and purpose of this uniform " Interstate Parole Compact " law does not permit such an inquiry, and any assumption of power in the " receiving state " to decide such an issue would go far toward defeating the beneficent purposes of this statute: that is, to permit one sentenced and paroled in one State to serve out his parole in another State where he will be surrounded by

home influences and where he can get a job. The only pertinent decision found by counsel is *People ex rel. Nagy* v. *Alvis* (152 Ohio St. 515, 519), where Ohio was the " receiving state " of a New York parolee; various questions were argued in the lower courts of Ohio, but the Supreme Court of Ohio held " ' that the contention of the petitioner that he is not a parole violator is such as must be decided by the state of New York, and is not subject to review in Ohio ' ". So says the uniform statute as we read it, and so we hold here.

The order should be affirmed.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and FROESSEL, JJ., concur.

Order affirmed.