The People of the State of New York ex rel. Willie H. Reid, Respondent, against Herman J. Ruthazer, as Warden of the City Prison of the City and County of New York, Respondent. The People of the State of New York, Appellant.

First Department, June 18, 1957.

*Albert P. Loening, Jr.*, of counsel (*Charles W. Manning* with him on the brief; *Frank S. Hogan, District Attorney,* New York County, attorney), for appellant.

*Milton H. Friedman* for relator-respondent.

BERGAN, J.   The relator having been convicted in Florida of assault with intent to murder, escaped confinement and fled to New York where he was arrested.   Upon receiving the requisition of Florida with the underlying papers showing the conviction was in due form, the Governor issued a warrant to the police commissioner of the City of New York which directed the delivery of the relator to the authorities of Florida as the demanding State in conformity with the Uniform Criminal Extradition Act (Code Crim. Pro., tit. IV, ch. 1).

A writ of habeas corpus directed to the warden of the city prison has been sustained by the court at Special Term and the relator directed to be discharged.   From this order the People of the State of New York appeal.   The ground for decision is that it appears upon the proof submitted in New York that the court in Florida in the proceedings upon which relator's plea of guilty was entered did not advise him that he had the right to the aid of counsel; that he did not have counsel; and that in the circumstances of this case the Florida proceedings so deprived relator of his constitutional rights as to vitiate entirely the proceedings in that State.

The New York court, in short, concluded that the Florida court acted without jurisdiction; that the proceedings there were a nullity; and this led directly to the conclusion that relator should be discharged from custody.

The Special Term was of opinion that since due process under the construction given the Constitution of the United States requires a person accused of crime to be informed of his right to counsel, the absence of such advice was fatal to the jurisdiction of the Florida court.   The Special Term observed: " Failure to impart such information to a defendant constitutes an incompetent court lacking in jurisdiction and renders all subsequent proceedings including the judgment of conviction

and sentence a nullity. A void judgment commands neither respect nor recognition."

The failure of a State court to advise a prisoner of his right to the aid of counsel may amount to a deprivation of due process in circumstances where the prisoner ought in fairness have the aid of counsel to understand the charge against him and to be able intelligently to plead to it or defend against it. But this must be evaluated from case to case, and the omission of the advice, standing alone, is not treated as an automatic deprivation of the right to due process under the United States Constitution.

This Federal judicial policy toward proceedings in State courts is to be seen by reading side by side *Bute* v. *Illinois* (333 U. S. 640), where the charge was regarded to have been so simple and unmistakable that the failure of the record to show relator had been advised of his right to counsel was not regarded as fatal to the judgment, and *Uveges* v. *Pennsylvania* (335 U. S. 437), where the age of the defendant, the failure of the Judge to explain the consequences of plea and conviction and the actions of prosecuting officers, were treated as sufficient, in the absence of advice that he had right to counsel, to warrant reversal. The policy of New York toward our own proceedings as developed by the writ of error *coram nobis* (*Matter of Bojinoff* v. *People,* 299 N. Y. 145) is irrelevant.

The question, whether the proceedings of the criminal courts in Florida are consistent with the due process requirements of the Constitution of the United States, is one which must first be examined and decided by the courts of Florida itself. Until the remedies of examination, review and correction have been exhausted in Florida, or are found to be unavailable, the United States courts will not entertain jurisdiction to examine purported failures of constitutional immunities and privileges. (Cf. *Cochran* v. *Kansas,* 316 U. S. 255; *Ex Parte Hawk,* 321 U. S. 114.)

But it does not lie within the competency of the New York Supreme Court to decide, without any resort having been had to the courts of Florida, issues touching upon the consistency of proceedings of the Florida criminal courts with the Constitution of the United States. Those are questions for decision by the judicial establishment of the State whose actions are challenged. The Federal compact does not tender either the duty or the power to every State to supervise the intramural judicial processes of the others.

Where those processes may reach a point of conflict with the United States Constitution, in the nature of things, the

Federal courts are the arbiters and make the necessary inquiry and render the appropriate judgment; but even they, by traditional law, by comity, and, indeed by due deference to the nature of the Federal structure, do not act until available remedies within the State itself have been exhausted.

It is settled that the Federal courts will not consider in the asylum State the question of constitutional deprivation charged against the demanding State in a case of extradition which follows due forms of law. (*Sweeney* v. *Woodall*, 344 U. S. 86; see, also, *Dye* v. *Johnson*, 338 U. S. 864.) The rule is followed in New York (*People ex rel. Gadson* v. *Hoy*, 285 App. Div. 974, motion for leave to appeal denied 308 N. Y. 1053, cert. denied 350 U. S. 829).

Entirely apart from the rule which has become ingrained, that remedies must first be exhausted in the State whose actions are challenged, there are additional pragmatic reasons, resting on the nature of the Federal structure, which make it inexpedient to examine in the asylum State issues of this sort relating to extradition. The State whose proceedings are challenged is not a party and ought not be required to litigate the validity of its judicial proceedings in a Federal district beyond its boundaries. It should certainly not be compelled to litigate such a question in courts of a sovereign peer.

There are procedural difficulties. The writ of habeas corpus must either be sustained or overruled. The man must be returned to the demanding State or let go free. If the defect was, for example, in sentencing a prisoner within our own jurisdiction, he could be remanded to the court for resentence in a case where the sentencing court was possessed of jurisdiction of the subject matter of the crime.

The Federal courts, reviewing the processes of the States on Federal questions, may make a similar remand. (Cf. *Cochran* v. *Kansas*, 316 U. S. 255, *supra*.) But if the Special Term is right in sustaining this writ, the prisoner must be discharged even though the jurisdiction of the Florida court to entertain the charge, and to convict and punish the offender with due regard to constitutional rights be conceded. The way we would remand to Florida would be to honor the requisition and enforce the Governor's warrant; and our views about what should be done thereafter would be gratuitous.

The papers which underlie the Governor's warrant are in due order; the relator has been identified as the person named in the Florida judgment and his presence in Florida at the time of the crime is not controverted. Those issues describe the usual boundaries of a habeas corpus directed against the

Governor's warrant on extradition. (Code Crim. Pro., §§ 829, 830, 849; *People ex rel. Rankin* v. *Ruthazer*, 304 N. Y. 302; *People ex rel. Higley* v. *Millspaw*, 281 N. Y. 441.)

The order should be reversed and the proceeding dismissed.

BREITEL, J. P., BOTEIN and RABIN, JJ., concur.

Order unanimously reversed and the proceeding dismissed. Settle order on notice.