## Commonwealth *v.* Kaminsky, Appellant.

Argued September 13, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Robert F. Simone,* for appellant.

*Charles A. Rogovin,* Assistant District Attorney, with him *Abner H. Silver* and *Joseph M. Smith,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, P. J., November 10, 1965:

This is an appeal by defendant from the order of the Court of Quarter Sessions of Philadelphia County remanding[1] him to the New York authorities, based on the procedure provided for in the Act of June 25, 1937, P. L. 2086, 61 PS §§321, 322, and entitled "Providing for the making of compacts by the Commonwealth with other states for mutual helpfulness in relation to persons on probation or parole. . . ." (hereinafter called the Compact Act).

The defendant contends that the court below erred in following the Compact Act and that it should have applied the provisions of the Uniform Criminal Extradition Act (Act of July 8, 1941, P. L. 288, 19 PS §191.1 et seq.). We cannot agree.

This is a case of first impression in Pennsylvania, and there are very few cases in other jurisdictions.

---

[1] The physical remand of the defendant was stayed and he was released on bail pending the outcome of this appeal.

Sherman Kaminsky, also known as Paul A. Vargo, appellant, was paroled from the Green Haven Prison, State of New York, on February 20, 1962. Pursuant to the Interstate Compact Concerning Parole which was adopted by the State of New York (Correction Law, §224) and by the State of Maryland (Code 1951, Art. 41, §§106-108), the duties of parole supervision were transferred to the Maryland authorities, where appellant was permitted to reside. Both of these acts are in all respects similar to the Pennsylvania Compact Act. A condition precedent to this transfer procedure was that appellant agree to abide by the terms of parole established by New York and Maryland. This agreement was embodied in a document, signed by appellant on February 15, 1962, entitled "Parole and Probation Form III, Agreement to Return," which states as follows: "I, Sherman Kaminsky, in consideration of being granted parole by the State of New York Division of Parole and especially being granted the privilege to leave the state of New York to go to Baltimore, Maryland, hereby agree . . .

"4. That I hereby do waive extradition to the state of New York from any jurisdiction in or outside the United States where I may be found and also agree that I will not contest any effort by *any jurisdiction* to return me to the state of New York." (Emphasis supplied).

Appellant was transferred to Maryland under supervision of the parole authorities of that State. Subsequently, appellant, voluntarily and without the consent of the New York or Maryland authorities, left Maryland and entered Pennsylvania. This conduct constituted a violation of his New York parole.

On May 24, 1965, appellant was arrested in Philadelphia pursuant to a warrant of arrest issued by Magistrate Edward T. Quinn, charging him with being a fugitive and in violation of his parole from the

State of New York. On May 25, 1965, appellant was afforded a preliminary hearing before Magistrate Quinn. Magistrate Quinn set bail in the amount of $10,000.00 for a further hearing to be held in thirty days. On the same day, the Commonwealth appeared before the Honorable THEODORE L. REIMEL, Judge of the Court of Quarter Sessions, and made application that the order of Magistrate Quinn be stayed and that a hearing be held to determine the applicability of the Compact to the facts. The Commonwealth's application was granted. Appellant argued that he was entitled to extradition proceedings. On May 28, 1965, Judge REIMEL, after hearing, determined that appellant be delivered to the New York authorities pursuant to the provisions of the Compact Act and that appellant was not entitled to extradition proceedings.

Art. I, §10, cl. 3 of the United States Constitution, provides: "No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State. . . ."

Recognizing this requirement, Congress, on June 6, 1934, enacted a statute which reads as follows: "(a) The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts." 48 Stat. 909 (formerly 18 U.S.C.A. 420). This provision was re-enacted verbatim by the Act of May 24, 1949, c. 139, §129(b), 63 Stat. 107 (4 U.S.C.A. 111). As a result of this consent of Congress, every state in the union has adopted an act which is similar in form to the Pa. Compact Act.[2]

---

[2] A table of the citations for the acts of the other states will be found in 61 PS, pp. 128, 129.

In summary, the Compact Act provides that the contracting states solemnly agree to permit any person convicted of an offense within one state (the sending state) to reside in any other state which is a party to the compact (receiving state) if such person is a resident or has his family residing within the receiving state and can obtain employment there or, though not a resident of the receiving state and not having his family residing there, the receiving state consents to his being sent there; the receiving state assumes the duty of visitation and supervision over the parolee of the same standard that it exercises over its own parolees. The act then provides: "(3) That duly accredited officers of a sending state may at all times enter a receiving state, and there apprehend and retake any person on probation or parole. For that purpose, no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state: Provided, however, That, if at the time when a state seeks to retake a probationer or parolee, there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense."

In 1942, the constitutionality of the California Compact Act was questioned in *Ex Parte Tenner*, 128 P. 2d 338. In that case the defendant was paroled by the State of Washington and permitted to reside in California. Later Washington revoked his parole and

sought his return under the provisions of the Compact Act. The defendant contended that the act was unconstitutional as repugnant to Art. IV, §2, cl. 2 of the United States Constitution and to §5278 of the Revised Statutes. Art. IV, §2, cl. 2 reads: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

It was held in the *Tenner* case that the extradition provision was not enacted for the benefit of the fugitive, but was a guarantee of which a state may avail itself to secure the return of an offender against its laws and that, if the return of the fugitive may be effected without the necessity of invoking the constitutional guarantee of the demanding state, no question of Federal constitutional law is involved. It was accordingly held that the Compact Act was not unconstitutional.

A similar situation arose in the cases of *Pierce v. Smith,* one in the Supreme Court of Washington, reported in 195 P. 2d 112, and the other in the United States Circuit Court, reported in 175 F. 2d 193. In both cases, the contention that the Washington Compact Act was unconstitutional was rejected for the same reasoning as in *Ex Parte Tenner,* supra. In both of the *Pierce* cases, certioraris were denied by the United States Supreme Court.

To like effect, see *Gulley v. Apple,* 210 S.W. 2d 514 (Ark. 1948); *People ex rel. Rankin v. Ruthazer,* 107 N.E. 2d 458 (N.Y. 1952); *U. S. ex rel. MacBlain v. Burke,* 200 F. 2d 616 (1952); *Stone v. Robinson,* 69 So. 2d 206 (Miss. 1954); *U. S. ex rel. Simmons v. Lohman,* 228 F. 2d 824 (1955); and *State of Minn. ex rel. Morris v. Tahash,* 115 N.W. 2d 676 (1962).

All the foregoing cases involved only two states. However, in 1946 a case arose involving three states, as does the present case. In *Ex Parte Casemento*, 49 A. 2d 437, one Nicholas Casemento was convicted and imprisoned in Pennsylvania but was granted the privilege of leaving Pennsylvania to go to Jamestown, New York, to live with his mother. He signed a written agreement with the Pennsylvania authorities that "in consideration of being granted a parole . . . and especially being granted the privilege to leave the State of Pennsylvania to go to New York State," he would not only live with his mother in New York State and abide by the parole regulations of both states but would return at any time to the State of Pennsylvania when instructed by New York State and "That I hereby do waive extradition to the State of Pennsylvania, and also agree that I will not contest any effort to return me to the State of Pennsylvania." Casemento went to New York State but shortly thereafter violated his parole by going to New Jersey, where he was arrested on a new charge. Upon being advised of his arrest, the Pennsylvania authorities applied to the New Jersey authorities for his return to Pennsylvania. The defendant contended there, as here, that because New Jersey was not the "receiving" state, the Compact Act could not apply and that Pennsylvania's only remedy was by extradition. This contention was denied. The court held, first, that since the purpose of the extradition clause in the Federal Constitution, Art. IV, §2, was to guarantee to the states the return of fugitives from justice, not to afford criminals "any immunity or protection from trial and punishment for any offenses committed in the state from which they flee" *(Lascelles v. State of Georgia,* 148 U.S. 537, 542, 13 S. Ct. 687, 689, 37 L. Ed. 549), it is questionable whether a fugitive has constitutional, as distinguished from statutory, rights to be returned on extradition, rather than by some other procedure.

In addition, the court held that even if it were a constitutional right, it could be waived, citing *Patton v. U. S.*, 281 U.S. 276, and *Adams v. U. S.*, 317 U.S. 269 and 605, and that Casemento had explicitly waived his right, the consideration for which was his freedom on parole. The court said that it might have been clearer had his waiver agreement stated that he would not contest any effort "by any state" to return him, but held that the intent of the agreement was so clear that the omission of those words was not fatal.

The *Casemento* case is on all fours with the present case but it is to be noted that the words suggested by the *Casemento* case have been included in the agreement to return which the present appellant executed with the State of New York, so that the agreement in the present case states that "I . . . agree that I will not contest any effort *by any jurisdiction* to return me to the state of New York." (Emphasis supplied).

Two other reported cases also involve three jurisdictions: *People ex rel. Marro v. Ruthazer*, 140 N.Y.S. 2d 571 (1955), and *Rider v. McLeod*, 323 P. 2d 741 (Okla. 1958). In addition, the appendix to the appellee's brief has furnished us with the opinions of the attorney generals of the States of Wyoming, Idaho and California, all of which reached the same conclusion. In no situation where the question has been raised have we found any authority to the contrary.

We feel that the reasoning of the foregoing cases is sound. In *Ex Parte Casemento*, supra, it was said: "The beneficent purpose, both to the prisoner and the public, of the Interstate Compact for the Supervision of Out-of-State Parolees and Probationers, is clear. The rehabilitation of a convicted man obviously benefits all concerned. If without danger to the public, this rehabilitation can, of course, be accomplished better without, than within, prison walls, and through employment in the neighborhood of one's family, rather

than in idleness amongst strangers, these being the very conditions stated by the compact. Furthermore, retaining the state's supervision over the prisoner's activities, wherever he may go, is clearly helpful, both to the public and the prisoner. This the compact alone can satisfactorily secure by making each state a supervising agent for the other. Indeed, not only the practical purpose of the compact, but the simplicity of its procedure, as to both the supervision of the parolee or probationer and his possible return, are clear."

If the simplicity of the procedure could be avoided by the parolee by the simple act of voluntarily leaving a receiving state, it might well deter parole authorities in future cases from allowing parolees to have the benefits intended by the Compact Act.

The order of the Court of Quarter Sessions of Philadelphia County is affirmed and the defendant is directed to appear in the court below at such time as he may there be called to comply with the terms of such order.