[No. 30559.   Department One.   June 25, 1948.]

*In the Matter of the Application of* BRUCE PIERCE *for a
Writ of Habeas Corpus, Appellant,* v. TOM SMITH,
*as Superintendent of the State
Penitentiary, Respondent.*[1]

[1]Reported in 195 P. (2d) 112.

*Bruce Pierce, pro se.*

*The Attorney General* and *Lucile Lomen, Assistant,* for respondent.

MILLARD, J.—The petition of Bruce Pierce, filed in this court, October 2, 1947, for a writ of *habeas corpus,* alleged that the petitioner was unlawfully removed from Oregon without extradition; that he was then taken to the Washington state penitentiary, where he was confined, although he had not been tried or convicted of any crime since his return to this state from Oregon; and that his detention was in contravention of his constitutional rights.

An order was entered, October 31, 1947, by the chief justice of this court, requiring the superintendent of the Washington state penitentiary to show cause in the superior court for Yakima county why the petition should not be granted. The return of the superintendent to the order to show cause discloses that the petitioner pleaded guilty to an information charging him with the crime of taking indecent liberties, and that, on November 10, 1939, he was adjudged guilty of that crime and sentenced to confinement in the state reformatory for a period of not more than twenty years.

February 7, 1940, the board of prison terms and paroles fixed the minimum duration of the confinement of petitioner in the reformatory at three years.

November 9, 1941, petitioner was paroled to go to his home in Oregon City, Oregon. October 23, 1942, he was arrested in Oregon and charged with the crime of contributing

to the delinquency of a minor. He was sentenced, January 13, 1943, to serve a one-year jail term in Oregon. March 5, 1943, the Washington parole was revoked, and, upon completion of his sentence in Oregon, petitioner was returned to the Washington state reformatory as a parole violator.

April 10, 1944, petitioner was again paroled to his family in Oregon, to be under the supervision of the officials of the parole board for the state of Oregon. Upon the recommendation of the Oregon board, his parole was revoked, November 23, 1945, and he was returned to the Washington state reformatory as a parole violator.

January 24, 1946, pursuant to order of the board of prison terms and paroles, petitioner was transferred from the reformatory to the state penitentiary at Walla Walla, to serve the balance of his term.

At the hearing to the superior court for Yakima county, December 20, 1947, petitioner appeared without counsel. No witnesses were called or sworn, but the documentary evidence introduced discloses the following facts:

An information was filed in Yakima, June 28, 1939, charging Pierce with the crime of taking indecent liberties, and, on the same day, an order for a warrant was filed, pursuant to which a warrant of arrest was issued; and petitioner was arraigned November 10, 1939, on which date, while represented by counsel, petitioner entered a plea of guilty. Judgment was entered sentencing petitioner to confinement in the state reformatory for not more than twenty years.

April 10, 1944, petitioner was paroled and permitted to go to Oregon, where he was under the supervision of the Oregon parole board. Upon the recommendation of that board, the parole of petitioner was revoked, and he was returned to the Washington state reformatory. The board of prison terms and paroles transferred petitioner to the state penitentiary at Walla Walla, to serve the remainder of his term. The order issued by the board provided that the case of Bruce Pierce be continued "for a period of his full 20 year maximum sentence from the 10th day of November, 1939."

The petition of Pierce for removal of the cause to the United States district court was denied, as was his petition for a writ of *habeas corpus*. The appeal is prosecuted from the order denying the writ of *habeas corpus*.

■ The contention of appellant that, when the board of prison terms and paroles has once fixed the duration of a prisoner's sentence, the period thus fixed becomes the maximum term, and the board is without authority to alter that term or to authorize the prisoner's detention beyond the expiration date of such period, is without substantial merit.

It is mandatory, under Laws of 1935, chapter 114, § 2, p. 309 (Rem. Rev. Stat. (Sup.), § 10249-2 [P.P.C. § 782-5]), upon the court to fix the maximum term of sentence only. Within six months after the admission of such convicted person to the penitentiary or reformatory, as the case may be, the board of prison terms and paroles "shall fix the duration of his or her confinement." The statute further provides that the term of imprisonment so fixed shall not exceed the maximum provided by law for the offense for which the person was convicted, or the maximum fixed by the court, where the law does not provide for a maximum term. Any convicted person undergoing sentence in the penitentiary or the reformatory, not sooner released under the provisions of § 2 of the cited statutes, shall, in accordance with the provisions of existing law,

". . . be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was convicted, or the maximum term fixed by the court where the law does not provide for a maximum term."

The statute (Laws of 1939, chapter 142, § 4, p. 422, Rem. Rev. Stat. (Sup.), § 10249-4 [P.P.C. § 786-1]) relating to release on parole of prisoners who have been sentenced to a term in the state penitentiary or reformatory, provides that

". . . no prisoner shall be released from the penitentiary or the reformatory unless, in the opinion of the Board of Prison, Terms and Paroles, his rehabilitation has

been complete and he is a fit subject for release, or until his maximum term expires."

Manifestly, a person is not entitled to release from the state penitentiary or reformatory prior to the expiration of his maximum term, unless the board of prison terms and paroles is of the view that he has been rehabilitated.

In *Lindsey v. Washington*, 301 U. S. 397, 81 L. Ed. 1182, 57 S. Ct. 797, the United States supreme court held that, under Laws of 1935, chapter 114, p. 308, the sentence of the defendant in this state for a period of fifteen years was made mandatory by the statute; that the parole board was authorized to fix the duration of confinement within that period and to fix it anew within that period for infraction of the rules; and that, even if paroled, the prisoner would remain subject to surveillance, and, until the expiration of the fifteen years, his parole would be subject to revocation at the discretion of the board or the governor. The court stated:

"The effect of the new statute is to make mandatory what was before only the maximum sentence. Under it the prisoners may be held to confinement during the entire fifteen year period. Even if they are admitted to parole, to which they become eligible after the expiration of the terms fixed by the board, they remain subject to its surveillance and the parole may, until the expiration of the fifteen years, be revoked at the discretion of the board or cancelled at the will of the governor. . . .

"Removal of the possibility of a sentence of less than fifteen years, at the end of which petitioners would be freed from further confinement and the tutelage of a parole revocable at will, operates to their detriment in the sense that the standard of punishment adopted by the new statute is more onerous than that of the old. . . . It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term."

In *In re Grieve v. Smith*, 26 Wn. (2d) 156, 173 P. (2d) 168, we held that the right to a discharge from confinement of a prisoner serving a maximum sentence, is not

a matter of right but is a matter of discretion with the board of prison terms and paroles.

■ However designated, the "duration of confinement" fixed by the board of prison terms and paroles is, in effect, a minimum term (*State v. Fairbanks*, 25 Wn. (2d) 686, 171 P. (2d) 845), and that board has supervision over appellant and may cause him to be detained in the penitentiary until the expiration of his maximum sentence of twenty years.

■ Extradition proceedings were not necessary to effect the return of appellant to this state from the state of Oregon. The argument that appellant is being detained in this state for an offense for which he has never been tried is without merit.

Authority to permit a parolee to reside in another state and to bring him again to this state upon revocation of parole is found in the "Interstate Compact for the Supervision of Parolees and Probationers," to which Oregon and this state became parties in 1937. The Congress of the United States consented to this interstate compact by an act which became effective, June 6, 1934. See 48 Stat. 909. Enabling legislation for Oregon is contained in Oregon Laws of 1937, chapter 36, and for this state, in Laws of 1937, chapter 92, p. 379, Rem. Rev. Stat. (Sup.), § 10249-11 [P.P.C. § 783-1].

The compact provides that the authorities of one state may permit any person released on parole to reside in any other state which is a party to the compact, if such person is a resident of the receiving state, or if the receiving state consents to receive him. Under the provisions of the compact, duly accredited officers of the sending state may, at all times, enter the receiving state and there apprehend and retake any person on probation or parole, and no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are waived on the part of states party to the compact as to such persons, and the decision of the sending state to retake a person on probation or parole, is

conclusive upon and not reviewable within the receiving state.

■ The challenge that the act is repugnant to Art. IV, § 2, clause 2, of the United States constitution, and to § 5278 of the revised statutes of the United States, 18 U.S.C.A. 662, providing for the extradition of fugitives from justice, and as being in violation of the fourteenth amendment to the United States constitution, in that it deprives one of liberty without due process of law, was considered in *In re Tenner*, 20 Cal. (2d) 670, 128 P. (2d) 338, and the compact was sustained. The court said:

"Nor does the act of the respondent deprive the petitioner of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution. He had his day in court when he was tried and convicted of a felony and sentenced to a maximum term of five years in the Washington State Penitentiary. The parole which he accepted was granted upon the express condition that the Board of Prison Terms and Paroles 'may at any time within its discretion and without notice cause the parolee to be returned to the said institution to serve the full maximum sentence or any part thereof.' One convicted of crime has the right to reject an offer of parole, but once having elected to accept parole, the parolee *is* bound by the express terms of his conditional release. (*In re Peterson*, 14 Cal. (2d) 82 [92 P. (2d) 890].) . . .

"The existence of an independent method of securing the return of out-of-state parolees does not conflict with nor render ineffectual the federal laws with relation to extradition. The federal method of extradition is always present and may be invoked when necessary to secure the right to return of the fugitive to the demanding state. Also states not party to the interstate compact are free to invoke that procedure to secure the return of fugitive parolees. And if a state has elected to follow the federal procedure and claim the constitutional guarantee, the fugitive of course has the right to insist, on habeas corpus, that the procedure conform to the federal law. Similarly the parolee detained under the interstate compact has the right to complain, by means of habeas corpus, if that law is not complied with by the authorities. But no right exists on the part of the parolee, whose parole has been revoked, to claim that he may only be removed by the method of his choosing. And

since the statute applies uniformly to all parolees from states party to the compact, the petitioner may not complain that the statute deprives him of the equal protection of the laws."

Appellant's removal from Oregon was based upon a revocation of his parole, and his detention in the state penitentiary is based upon a judgment and sentence entered upon his plea of guilty to the crime of taking indecent liberties committed in Washington in 1939.

■ The order revoking the parole of appellant is authorized by Laws of 1935, chapter 114, § 4, p. 313, as amended by Laws of 1939, chapter 142, § 1, p. 422 (Rem. Rev. Stat. (Sup.), § 10249-4), which provides that the board of prison terms and paroles shall have the power to establish rules and regulations under which a convicted person may be allowed to leave the confines of the penitentiary or reformatory on parole, and shall also have the power to return such person to the confines of the institution from which such person was paroled, at the discretion of the board.

A parole is not a right, but a privilege to be granted or withheld, as sound official discretion may impel. *State ex rel. Linden v. Bunge*, 192 Wash. 245, 73 P. (2d) 516. The revocation of parole is a matter which is left entirely to the discretion of the board. The procedure followed to revoke the parole of appellant and return him to this state was pursuant to statutory authorization.

■ It is finally contended that the judgment, pursuant to which appellant is detained, sentences him to be punished by confinement in the state reformatory for not more than twenty years; therefore, the board of prison terms and paroles, which is an administrative board, may not "commit" appellant to the penitentiary.

The statute (Laws of 1935, chapter 114, § 5, p. 316, Rem. Rev. Stat. (Sup.), § 10249-5 [P.P.C. § 788-1]) provides:

"Whenever in its judgment the best interests of the state or the welfare of any prisoner confined in any penal institution will be better served by his or her transfer to another institution the board of prison, terms and paroles is authorized to order and effect such transfer."

Pursuant to that authority, the board entered an order of transfer, which reads as follows:

"WHEREAS, BRUCE PIERCE, Washington State Reformatory No. 11028, was on the 10th day of November, 1939, sentenced by the Honorable Dolph Barnett, Judge of the Superior Court in and for Yakima County, Washington, to serve not more than twenty (20) years in the Washington State Reformatory; and

"WHEREAS, THE BOARD OF PRISON TERMS AND PAROLES deems it for the best interests of the State and the welfare of the said BRUCE PIERCE that he be confined in the Washington State Penitentiary at Walla Walla, Washington;

"Now, THEREFORE, IT IS ORDERED that the said BRUCE PIERCE be transferred to serve the balance of his term in the Washington State Penitentiary at Walla Walla, Washington."

The above-quoted order is valid under the provisions of the statute. The board has jurisdiction over appellant by virtue of the original judgment and sentence; hence, his detention in the penitentiary, rather than the reformatory, may not be successfully challenged.

The order is affirmed.

MALLERY, C. J., SIMPSON, SCHWELLENBACH, and HILL, JJ., concur.

---

July 22, 1948.   Petition for rehearing denied.