[Nos. 40696, 40720. En Banc. April 17, 1969.]

JULIUS EUGENE JANUARY, *Respondent*, v. JACK D. PORTER, *as Sheriff of King County, et al., Petitioners*, FRANK D. JAMES, *Judge of the Superior Court for King County, Respondent.*

FRED EUBANKS, *Respondent*, v. JACK D. PORTER, *as Sheriff of King County, et al., Petitioners*, FRANK D. JAMES, *Judge of the Superior Court for King County, Respondent.**

*Reported in 453 P.2d 876.

The Attorney General, Stephen C. Way, Assistant, Charles O. Carroll, and C. N. Marshall, for petitioners.

Henry P. Opendack, for respondents.

Michael H. Rosen, amicus curiae.

HALE, J.—These consolidated petitions for a writ of prohibition present the question of whether a convicted felon held in custody on a parole board order of detention may be released from detention on admission to bail by the superior court. In each case, the King County Sheriff, the Department of Institutions for the State of Washington, and the Board of Prison Terms and Paroles of the State of Washington, as petitioners, do not question the power of the superior court to admit an accused to bail on the charges pending before the court; they do, however, question the power of the court to direct the discharge on bail of a prisoner held in detention on order of the Board of Prison Terms and Paroles as a suspected parole violator.

### CASE OF JULIUS EUGENE JANUARY

March 10, 1964, the Superior Court for King County sentenced Julius January to a term of not more than 15 years' confinement for the crime of grand larceny. Shortly thereafter, he was sentenced, April 9, 1964, to not more than 20 years' confinement for the crime of carnal knowledge. The Board of Prison Terms and Paroles fixed his minimum term at 2½ years on each conviction and prescribed that the sentences run consecutively. August 21,

1967, the board ordered his release on parole on each judgment and sentence.

About 6 months after his release on parole, respondent January was charged March 7, 1968, in King County, with petit larceny and assault in the second degree and held in jail in lieu of $3,000 bail. The parole board, March 8, 1968, ordered the King County Sheriff to detain him in custody as a suspected parole violator. Then, on April 16, 1968, the Board of Prison Terms and Paroles ordered January's return to the Washington Correction Center for a parole revocation hearing then pending.

But a day earlier, April 15, the charges pending in King County were modified and reduced to misdemeanors and January was then charged in justice court with one count of petit larceny and two counts of assault in the third degree and his bail reduced from $3,000 to $500. He demanded a jury trial. That same day, on petition for habeas corpus, the superior court ordered his release on bail from the order of detention filed by the parole officer with the King County Sheriff. Then the Board of Prison Terms and Paroles reinstated January's parole effective as of April 16, 1968. Later, after trial and jury verdict of guilty of two counts of petit larceny and one count of assault in the third degree, the justice court sentenced January to 6 months' confinement consecutively on each count, but he was released from custody on a $1,500 appeal bond.

June 30, 1968, Seattle police arrested January on suspicion of robbery; his parole officer placed a detainer on him which was later canceled and he was again released. Then, November 12, 1968, he was arrested by Seattle police on suspicion of what the police call "car prowling" and for attempted burglary. Somehow or other, in a way not made clear in the record but acknowledged to be the fact by all parties, the respondent January at about this time was charged with violation of the Uniform Narcotic Drugs Act and his bail was set at $3,000. Meanwhile, his parole officer ordered his detention as a parole violator, and the Board of Prison Terms and Paroles ordered his parole suspended.

It was this latter formal charge—that of narcotics violation—according to the instant application for a writ of prohibition, that precipitated the present proceedings. Although the superior court had admitted January to bail in the amount of $3,000, the King County Sheriff declined to release him from the confinement directed by the parole officer's order of detention and the board's order of suspension of parole. Accordingly, January brought a petition for habeas corpus in superior court asking that he be released on $3,000 bail as fixed by the court on the narcotic violation charge then pending in superior court, and that the detainer lodged by his parole officer with the King County Sheriff be canceled. After hearing this petition for habeas corpus, the superior court fixed bail on the parole detainer at $50,000 and directed additionally that January, on duly posting it, should be released from the custody imposed by the order of the parole officer and the Board of Prison Terms and Paroles. Whereupon, petitioners joined to bring this application for a writ of prohibition to prevent the superior court from ordering January's release on bail from the custody imposed by virtue of the parole officer's order of detention and the board's order suspending parole.

### CASE OF FREDERICK ANTHONY EUBANKS

Raising identical issues is the case of Frederick Anthony Eubanks. January 22, 1965, he was convicted in Superior Court for King County of taking a motor vehicle without the permission of the owner in one count and burglary in the second degree in another count—both felonies. He received a deferred sentence and was set at liberty on probation. Three months later—presumably for violation of the terms of probation—the superior court, April 9, 1965, revoked the probation and deferment and sentenced Eubanks to maximum concurrent sentences of 10 and 15 years. July 10, 1967, the Board of Prison Terms and Paroles released him on parole. May 20, 1968, Seattle police officers arrested him, and he was charged with two counts of robbery with bail fixed at $5,000. His parole officer lodged with the King

County Sheriff an order of detention directing the sheriff to detain Eubanks—the order resting on the alleged parole violations involving two robberies and driving a car during revocation of his operator's license.

Pending prosecution of the two robbery counts, the board reinstated Eubanks to parole—and apparently he posted bail for, on August 21, 1968, the Seattle police again arrested him and another individual on suspicion of another robbery.

Five days later, August 26, 1965, a parole officer again filed an order of detention with the Sheriff of King County. Then, it seems, the two robbery charges were reduced to petit larceny in municipal court, and September 11, 1968, Eubanks was released on his personal recognizance on the petit larceny, but was held in custody on the parole officer's order of detention. Eubanks then brought an application in the superior court for release from the custody of the parole officer's order of detention and the court on habeas corpus ordered his release from both the parole detainer and the petit larceny charge. Thereafter, while Eubanks was at liberty, the Board of Prison Terms and Paroles ordered his parole suspended.

The order of arrest accompanying his suspension of parole could not be soon executed in this state for apparently Eubanks had fled the jurisdiction. He was later arrested, however, in Richmond, California, on the authority of warrants issued out of the Seattle Municipal Court on charges of grand larceny. Returned to Seattle, Eubanks stood trial on two counts of robbery for which he had been arrested April 20, 1968, and was sentenced to 35 years consecutively on each count, the jury returning a special verdict that at the time he committed each crime he was armed with a deadly weapon. He appealed his robbery conviction to this court and bail pending appeal was fixed by the superior court at $15,000, and on the grand larceny charge still pending at $5,000.

November 20, 1968, Eubanks filed a petition for habeas corpus with the superior court asserting that he was un-

lawfully held under both a parole detention order and an order suspending parole. At the conclusion of the hearing, the learned trial judge granted the application for habeas corpus and directed that bail pending appeal of the two robbery counts be fixed at $15,000, and at $5,000 on the pending grand larceny charge, and that, upon posting such bail, Eubanks be set at liberty on condition further that he appear before the Board of Prison Terms and Paroles at such time as the board should designate for a parole revocation hearing.

The Board of Prison Terms and Paroles, the Director of the Department of Institutions and the Sheriff of King County now bring before us this application for a writ of prohibition to prevent the superior court from releasing both Julius Eugene January and Frederick Anthony Eubanks from custody imposed by reason of and under authority of an order for detention issued by a duly constituted parole officer, and an order suspending parole duly issued by the Board of Prison Terms and Paroles. We think the applications well taken and that the writs should issue.

When one is confined, imprisoned, detained or subject to punishment by another, the courts of this country are never totally without jurisdiction to inquire into the legality of the confinement, imprisonment, detention or punishment. But the validity of the judgment and sentence under which respondent was imprisoned and then paroled is not in issue. The question here is whether confinement or detention imposed by order of a duly constituted parole officer, or by revocation of parole issued by the Board of Prison Terms and Paroles, is bailable by the superior court.

Under our system, the granting or denial of parole is not a part of the judicial process and is not a continuum of the judicial function of government. The judiciary's function ends with either a verdict of acquittal, or the revocation of probation, or the final entry of a judgment and sentence. Upon the entry of a final judgment and sentence of imprisonment, legal authority over the accused passes by operation of law to the Department of Institutions and

the Board of Prison Terms and Paroles and those agencies of the executive branch bear full responsibility for executing the judgment and sentence or granting parole— all, of course, pursuant to statutes constitutionally enacted. The courts have long recognized this division of power and the transfer of jurisdiction over a finally convicted felon from the judicial to the executive branch of government.

As so clearly established by the Attorney General's brief herein, the courts have long recognized, too, that, although releasing a convicted felon on parole may be beneficent and rehabilitative and in the long run produce a genuine social benefit, it is also a risky business. The parole may turn loose upon society individuals of the most depraved, sadistic, cruel and ruthless character who may accept parole with no genuine resolve for rehabilitation nor to observe the laws and customs promulgated by the democratic society; which in the process of self-government granted the parole. Thus, recognizing the risky nature of parole as well as its beneficent qualities, the courts have universally held that the granting or denial of parole by the Board of Prison Terms and Paroles rests exclusively within the discretion of the board; that parole is not a right but a mere privilege conferred as an act of grace by the state through its own administrative agency. *Pierce v. Smith,* 31 Wn.2d 52, 195 P.2d 112 (1948), *cert. denied,* 335 U.S. 834, 93 L. Ed. 387, 69 S. Ct. 24 (1948); *Butler v. Cranor,* 38 Wn.2d 471, 230 P.2d 306 (1951); *State v. Farmer,* 39 Wn.2d 675, 237 P.2d 734 (1951); *State ex rel. Alldis v. Board of Prison Terms & Paroles,* 56 Wn.2d 412, 353 P.2d 412 (1960).

In sustaining the discretionary powers of the board, the judiciary has simply given legal effect to the statute (RCW 9.95.110), which reads:

> The board of prison terms and paroles may permit a convicted person to leave the buildings and enclosures of the penitentiary or the reformatory on parole, after such convicted person has served the period of confinement fixed for him by the board, less time credits for good behavior and diligence in work . . .

Decisions concerning revocation of parole and return to imprisonment thus rest entirely within the discretion of the Board of Prison Terms and Paroles (*Lindsey v. Washington*, 301 U.S. 397, 81 L. Ed. 1182, 57 S. Ct. 797 (1937); *Pierce v. Smith, supra*)—or perhaps in some instances in the Governor. But the statutory powers do not end there. A further broad investment of control over the parolee, to the near exclusion of the courts, and including the power to summarily arrest and detain a parolee is seen in RCW 9.95.120, which provides, *inter alia*:

Whenever the board of prison terms and paroles or a probation and parole officer of this state has reason to believe a convicted person has breached a condition of his parole or violated the law of any state where he may then be or the rules and regulations of the board of prison terms and paroles, any probation and parole officer of this state may cause the arrest and detention of such convicted person pending a determination by the board whether the parole of such convicted person shall be revoked. All facts and circumstances surrounding the violation by such convicted person shall be reported to the board of prison terms and paroles by the probation and parole officer.

On the basis of the report by the probation and parole officer, or at any time upon its own discretion, the board may revise or modify the conditions of parole or order the suspension of parole by the issuance of a written order bearing its seal which order shall be sufficient warrant for all peace officers to take into custody any convicted person who may be on parole and retain such person in their custody until arrangements can be made by the board of prison terms and paroles for his return to the institution from which he was paroled. Any such revision or modification of the conditions of parole or the order suspending parole shall be personally served upon the parolee.

All chiefs of police, marshals of cities and towns, sheriffs of counties, and all police, prison, and peace officers and constables shall execute any such order in the same manner as any ordinary criminal process.

All public officials are enjoined to cooperate with the board in the exercise of its lawful duties. RCW 9.95.140.

That a parole may be suspended or revoked for a mere violation of the conditions or terms of parole or for violation of the rules and regulations not amounting to the commission of a crime is apparent from a reading of RCW 72.04A.090 (Laws of 1967, ch. 134, § 11, p. 640):

Whenever a parolee breaches a condition or conditions under which he was granted parole, or violates any law of the state or rules and regulations of the board of prison terms and paroles, any probation and parole officer may arrest such parolee without a warrant, pending a determination by the board. The facts and circumstances of such conduct of the parolee shall be reported by the probation and parole officer, with recommendations, to the board of prison terms and paroles, who may order the revocation or suspension of parole, revise or modify the conditions of parole or take such other action as may be deemed appropriate in accordance with RCW 9.95.120.

The probation and parole officers shall have like authority and power regarding the arrest and detention of a probationer who has breached a condition or conditions under which he was granted probation by the superior court, or violates any law of the state, pending a determination by the superior court.

In the event a probation and parole officer shall arrest a parolee or probationer in accordance with the provisions of this section, such parolee or probationer shall be confined and detained in the county jail of the county in which the parolee or probationer was taken into custody, and the sheriff of such county shall receive and keep in the county jail, where room is available, all prisoners delivered thereto by the probation and parole officer, until discharged according to law.

One on parole from a final judgment and sentence of imprisonment is not a free man; he has not, by his parole, satisfied the judgment and sentence; his release is conditional only, and whether he has fulfilled the conditions of his parole is a determination to be made by the Board of Prison Terms and Paroles and not by the courts. His status on parole has been aptly described as that of one who is simply serving his time outside the prison walls.

Thus, a person judicially sentenced to confinement by virtue of a final judgment and sentence of a court of com-

petent jurisdiction and released on parole by the executive branch of government—the branch of government charged by law with executing the sentence—remains in custodia legis until expiration of the maximum term for which he has been sentenced unless earlier pardoned by the Governor. *State ex rel. Mason v. Superior Court,* 44 Wn.2d 67, 265 P.2d 253 (1954); *Mason v. Cranor,* 42 Wn.2d 610, 257 P.2d 211 (1953), *cert. denied,* 346 U.S. 901, 98 L. Ed. 401, 74 S. Ct. 229 (1953); *Scott v. Callahan,* 39 Wn.2d 801, 239 P.2d 333 (1951). Since his liberty is but a part of his confinement under a final judgment and sentence, the law has no provision for release on bail pending hearing in revocation of parole.

■ It is the view of this court, therefore, and one widely held in this country that, unless the statutes provide expressly otherwise, the courts are without power to grant bail to a convicted prisoner on parole arrested and held in custody for a violation of the terms and conditions of his parole. *Gaertner v. State,* 35 Wis. 2d 159, 150 N.W. 2d 370 (1967); *Hardy v. Warden of the Queens House of Detention for Men,* 56 Misc. 2d 332, 288 N.Y.S.2d 541 (1968); *Aguilera v. California Dept. of Corrections,* 247 Cal. App. 2d 150, 55 Cal. Rptr. 292 (1966); 8 C.J.S. *Bail* § 36 (1962). The writs of prohibition should accordingly issue prohibiting the superior court from admitting respondents to bail and discharging them from the custody imposed by the order of detention filed by the duly authorized parole officers or the orders suspending parole issued by the Board of Prison Terms and Paroles.

■ One other point arising by inference invites further comment. Although a parolee held for a possible parole violation or impending revocation of a parole has no right to bail and the courts are without power in such instances to admit him to bail, unless his detention and revocation are based on conviction of a felony or a misdemeanor, he does have a statutory right to a fair and impartial hearing within 30 days on the question of his parole revocation or detention, and the courts are not without power to mandate such a hearing.

RCW 9.95.120 states:

> Whenever a paroled prisoner is accused of a violation of his parole, other than the commission of, and conviction for, a felony or misdemeanor under the laws of this state or the laws of any state where he may then be, he shall be entitled to a fair and impartial hearing of such charges within thirty days from the time that he was returned to the institution from which he was paroled before at least two members of the parole board. Upon such hearing such paroled prisoner shall be allowed to be heard and may defend himself, and may be represented by an attorney and he shall have the right to present evidence and witnesses in his behalf. After such hearing the board of prison terms and paroles shall make an order either (1) revoking the parole of such convicted person, or (2) reinstating the parole previously granted. In the event the parole is revoked, the board of prison terms and paroles shall make an order determining a new minimum sentence, not exceeding the maximum penalty provided by law for the crime for which he was originally convicted, or the maximum fixed by the court.

The statutory right to a hearing as granted by the foregoing statute is not to be abridged merely because the parolee is not bailable.

Writs to issue.

ALL CONCUR.