[No. 1690-3.    Division Three.    May 18, 1976.]

WILFORD HAROLD OGDEN, JR., *Appellant*, v. ARTHUR KLUNDT, ET AL, *Respondents*.

*McAdams & Schacht* and *Ronald K. McAdams*, for appellant.

*Arthur R. Eggers, Prosecuting Attorney*, and *Carl L. Johnson, Deputy*, for respondents.

McInturff, C.J.—Wilford Harold Ogden, Jr., appeals from a judgment denying his petition for writ of habeas corpus and ordering his return to Oregon under provisions of the Uniform Act for Out-of-State Supervision, RCW 9.95.270. We affirm the judgment of the Superior Court, and order the immediate remand of Mr. Ogden to the custody of Oregon authorities.

Mr. Ogden is an Oregon parolee present in Washington under provisions of the Uniform Act for Out-of-State Supervision, which allows a parolee to reside in another state which is party to the act.[1] While in Washington, Mr. Ogden was convicted of burglary and sentenced to the Washington State Penitentiary. He was tentatively scheduled for Washington parole on November 11, 1974, to an Oregon detainer for an Oregon parole violation stemming from his Washington burglary conviction. The Washington parole date was withdrawn pending final revocation of his Oregon parole. On December 6, 1974, the Oregon parole board conducted a revocation hearing at the Washington State Penitentiary, and did revoke Mr. Ogden's Oregon parole after further administrative procedure in January 1975.

Mr. Ogden was paroled in Washington to the Oregon detainer on April 30, 1975, and was transferred to the custody of the Walla Walla County Sheriff for release to Oregon authorities. The present habeas corpus action was filed in Walla Walla County Superior Court on May 9, 1975, to test Mr. Ogden's confinement in the county jail. Apparently fearing the release of Mr. Ogden in the habeas corpus action, the Walla Walla County Prosecutor filed a fugitive complaint in Walla Walla District Court under RCW 10.88.320, an extradition statute.

A hearing on the petition for writ of habeas corpus was had in Superior Court, and Mr. Ogden ordered returned to Oregon. Mr. Ogden is presently being held in the Walla Walla County jail without bail, pending the outcome of this appeal.

Mr. Ogden challenges his return to Oregon on three

[1] RCW 9.95.270(1).

grounds. He argues first that Washington and Oregon authorities proceeded under the Uniform Act for Out-of-State Supervision, RCW 9.95.270, and then under the Uniform Criminal Extradition Act, RCW 10.88. Because Mr. Ogden has relied upon time periods and procedures under the extradition act, it is argued that Washington and Oregon should be held to have elected the extradition remedy, and be barred from further proceedings under the Uniform Act for Out-of-State Supervision. We find the argued election of remedies unsupported by the record.

The election to pursue extradition via a fugitive complaint was made by the Walla Walla County Prosecuting Attorney. However, election to proceed under the Uniform Criminal Extradition Act is specifically reserved to the governor of the demanding state, here Oregon.[2] The Governor of Oregon never elected to initiate extradition proceedings. Oregon cannot be bound to a remedy it did not choose.[3]

It cannot be successfully argued upon the record that the Walla Walla County Prosecuting Attorney was acting as an Oregon agent when the fugitive warrant was filed. Oregon had clearly elected to proceed under the Uniform Act for Out-of-State Supervision, which specifically reserves election of action to the sending state, Oregon.[4] At no time did Oregon cloak the Walla Walla County Prosecuting Attor-

[2] RCW 10.88.220 provides: "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing . . . together with a statement by the executive authority of the demanding state . . ."

[3] *Lange v. Woodway*, 79 Wn.2d 45, 49, 483 P.2d 116 (1971).

[4] RCW 9.95.270(3) provides:

"That duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole. . . . The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state . . ." *See* RCW 9.95B.010, which provides:

"Where supervision of a parolee or probationer is being administered by this state pursuant to RCW 9.95.270, . . . this state shall notify the compact administrator of the sending state whenever, in their view, consideration should be given to retaking or reincarceration for a parole or probation violation. . . ."

ney with authority to elect extradition. The prosecutor acted independently, without agency or statutory power to alter the Oregon decision to proceed under the Uniform Act for Out-of-State Supervision.

Mr. Ogden further challenges his return to Oregon upon the alleged failure of the Washington court to observe statutory procedures in ordering his return. Specifically, Mr. Ogden challenges the admission into evidence of uncertified Oregon public records to establish the authority of Oregon officers present in Washington for his return.

■ The Uniform Act for Out-of-State Supervision provides "[t]hat duly accredited officers of a sending state [Oregon] may at all times enter a receiving state [Washington] and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken."[5] Of the two requisites for return, only the authority of the Oregon officers is challenged. Though the authority of the officers might be established by authenticated documents, documentation does not present an exclusive method for establishing authority. An officer may establish his authority by direct testimony.[6] In the present case, the Oregon officers testified in Superior Court as to their authority, ending the need for authentication of documents of authority.[7] Mr. Ogden's contention concerning the lack of authentication as affecting his return is without merit.

■ As his third challenge to return, Mr. Ogden argues a denial of due process of law by Oregon through absence of a speedy revocation hearing, as required by *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). We answer this argument by restating that the scope of Washington judicial review of a demand for return under the Uniform Act for Out-of-State Supervision is lim-

---

[5]RCW 9.95.270(3).

[6]*State v. Stephens*, 83 Wn.2d 485, 489-90, 519 P.2d 249 (1974).

[7]CR 44(c), dealing with proof of official records, provides: "This rule does not prevent the proof of official records or of entry or lack of entry therein by any other method authorized by law."

ited to a determination of (1) authority of the demanding officers and (2) identity of the person to be retaken. The alleged due process violations are properly dealt with in Oregon.[8]

We further hold that Mr. Ogden's preliminary detention in the Walla Walla County jail has resulted in no denial of due process by Washington. A parolee present in Washington pursuant to the Uniform Act for Out-of-State Supervision may be taken into custody and detained "for such reasonable period after the hearing or waiver as may be *necessary to arrange for the retaking or reincarceration.*"[9] (Italics ours.) Reviewing briefly the facts of the present case, Mr. Ogden was paroled in Washington to the Oregon detainer on April 30, 1975. His parole was a matter within the discretion of the Washington Board of Prison Terms and Paroles, thereby preventing earlier retaking by Oregon, had they attempted to retake their parolee.[10] The possibility of Oregon action to retake Mr. Ogden was blocked again on May 9, 1975, by Mr. Ogden's filing of his petition for writ of habeas corpus in which he requested his return to Oregon be enjoined pending hearing on the petition. Return was enjoined by the Superior Court on the same day. Thus, Oregon authorities delayed 9 days, from April 30 to May 9, in retaking Mr. Ogden. There has been no showing by Mr. Ogden that these 9 days were not "necessary to arrange for the retaking or reincarceration", and thus an unreasonable period of detention.

Unreasonable preliminary detention in Washington will not affect return to Oregon in any case, the two procedures being separate and independent.[11] Mr. Ogden's re-

---

[8]*Pierce v. Smith*, 31 Wn.2d 52, 57-58, 195 P.2d 112 (1948); *People ex rel. Crawford v. State Department of Correctional Servs.*, 38 App. Div. 2d 725, 727, 329 N.Y.S.2d 739, 742 (1972); *State ex rel. Nagy v. Alvis*, 152 Ohio St. 515, 90 N.E.2d 582, 583-84 (1950).

[9]RCW 9.95B.010. (Mr. Ogden waived the preliminary hearing required by this statute.)

[10]RCW 9.95.110; *January v. Porter*, 75 Wn.2d 768, 774-75, 453 P.2d 876 (1969).

[11]*See Bailey v. Gallagher*, 75 Wn.2d 260, 265, 450 P.2d 802 (1969).

lease in Washington from unreasonable preliminary detention would not affect the right of Oregon officers to enter Washington and retake their parolee.[12]

We now turn to the separate issue of right to release of a parolee during preliminary detention in Washington while awaiting return to the sending state. It is argued by Mr. Ogden that release on bail or supersedeas bond should be available to him during preliminary detention under the Uniform Act for Out-of-State Supervision. We disagree.

Absent express statutory authorization, the courts of Washington are without power to release on bail or bond a parolee arrested and held in custody for violating his parole.[13] The Uniform Act for Out-of-State Supervision provides that a parole violator shall be held, and makes no provision for bail or bond.[14] The person on parole remains in constructive custody until his sentence expires. Restated, his liberty is an extension of his confinement under final judgment and sentence. Whether the convicted person be in actual custody within the prison walls or in constructive custody within the prison of his parole, the rule is unchanging; there is simply no right to release on bail or bond from prison.

Judgment of the Superior Court is affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied June 29, 1976.

Review denied by Supreme Court November 12, 1976.

---

[12]RCW 9.95.270(3).

[13]*January v. Porter*, 75 Wn.2d 768, 453 P.2d 876 (1969); *State v. Simms*, 10 Wn. App. 75, 82, 516 P.2d 1088 (1973).

[14]RCW 9.95B.010.