[Crim. No. 23215. First Dist., Div. Three. Mar. 5, 1982.]

In re WILLIAM ALBRIGHT on Habeas Corpus.

COUNSEL

Jeff Brown, Public Defender, Peter G. Keane, Chief Attorney, Mary Ann Bannan-Haines and Donna Teshima, Deputy Public Defenders, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson, Dane R. Gillette and Nancy Stewart, Deputy Attorneys General, for Respondent.

OPINION

SCOTT, J.—This petition seeks to set aside an extradition order by which petitioner is to be returned to Nevada for sentencing on a parole violation.

On January 18, 1977, petitioner William Albright was sentenced in the Washoe County Judicial District, Nevada, to six years in the Nevada State Prison for the crime of battery with a deadly weapon.

On January 30, 1978, in anticipation of being paroled, petitioner signed an agreement to return to Nevada when instructed by the proper

authorities. This was signed in consideration of his being granted parole and the privilege of being under supervision in the State of California in accordance with the Interstate Parole and Probation Supervision Compact. The same document contained a waiver of extradition and an agreement not to contest any effort by any jurisdiction to return him to the State of Nevada, signed by petitioner at the same time.

On March 7, 1978, petitioner was granted parole and, as part of his parole agreement, again signed an agreement to waive extradition and not contest any effort to return him to the State of Nevada.

On December 28, 1980, petitioner was arrested by the San Francisco Police Department for crimes committed in San Francisco, including possession of dynamite, possession of a weapon, assault with a deadly weapon, and kidnaping for ransom. On December 31, 1980, San Francisco authorities reported the arrest to the Nevada Department of Parole and Probation. The Nevada authorities issued a report recommending a retake warrant for petitioner's arrest and return to Nevada State Prison upon the adjudication of the pending California charges. On February 5, 1981, a retake warrant issued.

Petitioner pled guilty to the charge of false imprisonment here in California and was placed on probation on condition that he serve a sentence in the county jail. The jail sentence expired in June 1981, and extradition proceedings began after that.

On July 7, 1981, a hearing was held before the San Francisco Municipal Court on a complaint alleging petitioner to be a fugitive from justice. Petitioner was represented by counsel who objected to petitioner's delivery to Nevada on ground that the waiver of extradition signed by appellant in Nevada was not effective. Counsel conceded that appellant had signed the waiver. The court set August 7, 1981, for delivery of petitioner to the Nevada authorities. Before that date petitioner filed a petition for a writ of habeas corpus in the San Francisco Superior Court which was denied. This petition followed.

The order to show cause issued by the California Supreme Court, made returnable before this court, ordered the Sheriff of San Francisco County to show cause "why, if petitioner is to be extradited, his waiver executed out of state should not be deemed invalid in light of the requirements of Penal Code section 1555.1; In re Schoengarth [1967], 66 Cal.2d 295 [57 Cal.Rptr. 600, 425 P.2d 200]; In re Patterson [1966],

64 Cal.2d 357, 363; and In re Satterfield [1966], 64 Cal.2d 419, 422 [50 Cal.Rptr. 284, 412 P.2d 540]; or, if return is sought pursuant to Penal Code § 11175 et seq., due process does not require that he be afforded a hearing at which he is represented by counsel, and may challenge the sufficiency of the demand for his return and/or his identity as the person sought. (See People v. Ramirez, [1979] 25 Cal.3d 260, 268-269 [158 Cal.Rptr. 316, 599 P.2d 622].)"

## I. *Extradition Act*

Penal Code sections 1548 through 1558, the Uniform Criminal Extradition Act, provide the legal framework for extraditing fugitives from justice. Section 1555.1 specifies the manner in which an arrested person may waive extradition: "Any person arrested in this State charged with having committed any crime in another State or alleged to have escaped from confinement, or broken the terms of his bail, probation or parole may waive the issuance and service of the Governor's warrant provided for in this chapter and all other procedure incidental to extradition proceedings, by subscribing *in the presence of a magistrate within this State* a writing which states that he consents to return to the demanding State; provided, however, that before such waiver shall be subscribed by such person, the *magistrate shall inform him of his rights* to require the issuance and service of a warrant of extradition as provided in this chapter." (Italics added.)

Case law has reiterated the requirements that such a waiver be signed before a magistrate with proper admonitions (*In re Schoengarth, supra*, 66 Cal.2d at p. 303) and that the waiver must be signed in the asylum state (*In re Patterson, supra*, 64 Cal.2d at p. 363; *In re Satterfield, supra*, 64 Cal.2d at p. 421).

■ The purported waiver in this case is a Nevada document apparently signed in Nevada and witnessed only by parole board and prison representatives. Clearly, it does not satisfy the requirements of Penal Code section 1555.1. We conclude that petitioner cannot be extradited to Nevada pursuant to the provisions of the Uniform Criminal Extradition Act (Pen. Code, §§ 1548-1558). The Attorney General does not argue otherwise, but only contends that the extradition procedures contained in the extradition act are not exclusive of less formal means of returning parole violators permitted to reside in California under the Uniform Act for Out-of-State Probationer or Parolee Supervision, enacted in California as Penal Code section 11175 et seq.

## II. *Out-of-State Parolee Supervision Act*

The Uniform Act for Out-of-State Probationer or Parolee Supervision, Penal Code section 11175 et seq., invests the Governor with the authority to enter into agreements with other states for the transfer of parolees between states for supervision by the receiving state. Such an agreement has been entered into between California and Nevada. Subdivision (3) of section 11177 provides that one term of the compact should state: "(3) That duly accredited *officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole.* For that purpose *no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state.* If at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense." (Italics added.)

In *In re Tenner* (1942) 20 Cal.2d 670 [128 P.2d 338], the California Supreme Court upheld the constitutionality of the Uniform Act for Out-of-State Parolee Supervision. There a parolee from Washington State Penitentiary was arrested in California and sought habeas corpus challenging the act. The *Tenner* court noted that the federal Constitution provided for extradition rights and that federal legislation had implemented the constitutional provision. It concluded, however, that "[n]either the terms of the constitutional provision nor the act of Congress making it effective indicate that the extradition procedure was intended to be exclusive." (*Id.*, at p. 677.) The court further found that the parolee supervision act did not deprive the petitioner of his liberty without due process because he had had his day in court on the issue of guilt, and once convicted he had the right to reject the offer of parole and the conditions attached thereto. (*Id.*, at p. 674.) Clearly the Uniform Act for Out-of-State Probationer or Parolee Supervision provides an alternative method by which an out-of-state parolee can be returned to the sending state.

■ We turn now to the second part of the question presented by the Supreme Court in its order to show cause, that is, whether due process requires that the petitioner be afforded a hearing at which he is represented by counsel and may challenge the sufficiency of the demand for his return and/or his identity as the person sought.

Petitioner contends that due process requires a noticed hearing, pre-hearing discovery, appointment of counsel, an opportunity to contest the validity of the waiver document, and an opportunity to show that the waiver was not given voluntarily. The Attorney General argues, by analogy to cases interpreting the interstate Agreement on Detainers (Pen. Code, § 1389), that at most a fugitive should be afforded a right to be taken before a judge before rendition, a right to counsel, and a right to challenge rendition by a petition for writ of habeas corpus. Issues which the court may consider would be (1) whether the person in custody is the same person wanted in the demanding state, (2) whether that person is a fugitive from justice, (3) whether the person is charged with or convicted of a crime in the demanding state, and (4) whether the documents are on their face in order (cf. *Pacileo* v. *Walker* (1980) 449 U.S. 86 [66 L.Ed.2d 304, 101 S.Ct. 308], rehg. den., 450 U.S. 960 [67 L.Ed.2d 385, 101 S.Ct. 1421]). The documents would be in order if the demanding state had supplied evidence that (a) the fugitive is on parole, (b) he signed a waiver of extradition as a condition of parole, and (c) the paroling authorities have ordered the return of the fugitive. The Attorney General further asserts that the standard of proof should be no more than the probable cause test which justifies an arrest and that strict rules of evidence should not apply, any more than they do when a court reviews an affidavit in support of a warrant.

Penal Code section 11177, subdivision (3), by its terms, would permit the sending state's officers to enter and retake with "no formalities ... other than establishing the authority of the officer and the identity of the person to be retaken." It does not explain the nature of the "formalities" involved in establishing authority and identity. However, the Supreme Court in *People* v. *Ramirez, supra*, 25 Cal.3d at pages 268-269, has said that "when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity. . . .

"

"[The] cases disclose that the extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context. In some instances this balancing may counsel formal hearing procedures that include the rights of confrontation and cross-examination, as well as a limited right to an attorney. [Citations.] In others, due process may require only that the administrative agency comply with the statutory limitations on its authority. [Citation.] More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]"

In the context of a decision to return a California supervised parolee to the sending state, the primary concerns are that the sending state's request is genuine, that the sending state's authority over the individual has not expired, and that the individual arrested is the correct person. It is not for California to determine whether the defendant committed the underlying offense or whether he violated conditions of his parole. Petitioner contends that his waiver, if genuine, was coerced or was given only in an adhesive agreement by which he gave up rights in exchange for liberty. However, there is no "constitutional right" not to be extradited. *In re Tenner, supra*, 20 Cal.2d 670, 677, establishes that "[t]he right created by [the federal Constitution] ... is a guarantee of which a state may avail itself to secure the return of an offender against its law ... [a]nd ... is not for the benefit of the fugitive ...." The court is not required to go beyond the face of the documents to determine the circumstances under which the waiver was signed. If each parolee on supervision in California were permitted to attack his waiver, the return process would become so burdensome as to jeopardize the program of transferring parole supervision to sister states. The significance of the waiver document is only that it obviates the necessity to follow the procedures of the Uniform Criminal Extradition Act (Pen. Code, §§ 1548-1558). Since the existence of a valid waiver merely causes return to take place under a different set of procedures, *which themselves satisfy due process requirements*, there is no justification for an examination

into the circumstances behind the waiver. The arrestee's interest in being formally extradited does not outweigh the burden which would be placed upon the courts to determine the state of mind of each parolee when he or she signed the waiver form which invoked the alternative procedure.

We conclude that due process requires that the arrestee be afforded the right to counsel, to be taken before a judge who will determine the issues of identity, jurisdiction of the demanding state and validity of the demand, and to petition for writ of habeas corpus to challenge any irregularities.

The remaining question is whether the proceeding below satisfied these due process requirements.

In the instant action the petitioner did not file a traverse to deny the allegations of fact set forth in the People's return to the order to show cause; therefore, the factual allegations for such return are deemed true. (*In re Lawler* (1979) 23 Cal.3d 190, 194 [150 Cal.Rptr. 833, 588 P.2d 1257].) The return asserts that counsel was appointed for petitioner and that during the proceedings on July 7, 1981, Inspector Kenney presented to the court the waiver of extradition, that petitioner's attorney stated she believed the signature was petitioner's and that the court determined that he had signed the waiver. Petitioner has not properly asserted lack of counsel, an improper hearing, or denial of the opportunity to challenge the demand or his identity as the person sought.

Thus, the demand of the order to show cause has been met by respondent. Furthermore, we have examined the transcripts of the proceedings before the municipal court and conclude he was afforded the due process we have herein described.

Petitioner's petition for writ of habeas corpus is denied and the alternative writ is discharged.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied March 29, 1982, and petitioner's application for a hearing by the Supreme Court was denied April 28, 1982.