The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Lee VELARDE, Defendant-Appellant.

No. 85SA333.

Supreme Court of Colorado, En Banc.

July 13, 1987.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Kenneth M. Plotz, Deputy State Public Defender, Denver, for defendant-appellant.

KIRSHBAUM, Justice.

The petitioner, Lee Velarde, appeals an order of the Fremont County District Court quashing a writ of habeas corpus and requiring Velarde's transfer to the custody of Nevada authorities pursuant to provisions of the Uniform Act for Out-of-State Parolee Supervision, §§ 24–60–301 to –309, 10 C.R.S. (1982) (Parolee Supervision Act). We affirm.

I

In April 1977, Velarde was sentenced in Nevada to a term of imprisonment of fifteen years as the result of a robbery conviction. On July 8, 1980, the Nevada Board of Parole Commissioners placed Velarde on parole. His parole agreement permitted him to reside in Colorado under the supervision of Colorado authorities until January 1989.[1] The agreement also contained a provision by which Velarde expressly waived extradition to Nevada from any state and agreed that he would not contest any efforts to return him to Nevada.

On the basis of arrests and convictions sustained by Velarde in Colorado between 1981 and 1983, Nevada authorities issued a "Warrant for Retaking Paroled Prisoners" on February 18, 1983, authorizing qualified parole officers or peace officers to retake Velarde. On March 21, 1983, Velarde was sentenced in Colorado to a term of imprisonment of five years as the result of a theft conviction.

On July 1, 1985, apparently after his release from the custody of the Colorado Department of Corrections, Velarde appeared before the Fremont County District Court.[2] The trial court at that time ad-

---

1. *See* Nev.Rev.Stat.Ann. §§ 213.180–.210 (Michie 1986).

2. The record does not reveal who actually brought Velarde to court.

vised Velarde of his right to remain silent and his right to contest extradition under the Uniform Criminal Extradition Act, §§ 16–19–101 to –132, 8A C.R.S. (1986) (Extradition Act), appointed counsel to represent him and continued the case to July 9, 1985, for further proceedings. On July 9, Velarde indicated that he would contest any extradition proceedings and the district attorney informed the trial court and Velarde that the People intended to proceed under the Parolee Supervision Act rather than under the Extradition Act. On July 15, the People filed a motion to proceed under the Parolee Supervision Act, contending that Velarde had no right to contest his return to Nevada under the terms of the Parolee Supervision Act and his agreement pursuant thereto.

On August 28, 1985, a different judge conducted a hearing on the People's motion. The defendant argued that the People could not proceed under the Parolee Supervision Act but must pursue the question of his return to Nevada under the provisions of the Extradition Act, as the case was initially postured. The trial court concluded that the People could proceed under either the Parolee Supervision Act or the Extradition Act. The trial court indicated, however, that in proceedings under the Parolee Supervision Act some form of warrant for the parolee's arrest would have to be obtained to permit Colorado authorities to arrest the parolee, and observed that no such warrant appeared to have been issued.

At this point in the hearing the district attorney stated that a warrant for the defendant's arrest had been issued by Nevada authorities, indicated that Colorado had received an authenticated copy of that warrant and other authenticated documents from the State of Nevada establishing the identity of the defendant and the authority of Nevada to retake the defendant pursuant to the Parolee Supervision Act, and argued that "we can arrest him today pursuant to the exemplified record of the State of Nevada, and proceed under [the Parolee Supervision Act] and [i]f this is not the appropriate case, then we can of course dismiss the case and have him arrested on the Nevada warrant...." At the request of the deputy district attorney, the trial court then conducted an evidentiary hearing during which authenticated documents were admitted into evidence establishing the defendant's identity and confirming the fact that on February 18, 1983, Nevada authorities issued a warrant for retaking paroled prisoners authorizing Nevada officials to retake the defendant and return him to Nevada.

At the conclusion of this hearing, the trial court ruled that the People were entitled to proceed under the Parolee Supervision Act, in effect granting the People's motion. The trial court then ordered the defendant to be retained in custody for twenty-four hours, ordered the district attorney to cause a warrant to be issued for the defendant's arrest by August 29, and set the matter for further proceedings under section 24–60–306 on September 11, 1985.

On August 29, 1985, the People filed a complaint for revocation of parole. The complaint stated that it was designed "to give notice pursuant to [section 24–60–308(1)(a), 10 C.R.S. (1982)] of the nature and content of the allegations that Lee Velarde committed a violation of his parole." On September 4, Velarde filed his petition for issuance of a writ of habeas corpus.[3] The petition alleged that the defendant was being illegally confined without due process of law; that he was arrested on August 29, 1985, and was being held "without any criminal charges being filed against him"; and that because the People

---

**3.** A petition for writ of habeas corpus commences a civil action that is independent of any criminal proceedings. *People v. Calyer,* 736 P.2d 1204 (Colo.1987); *People v. Lent,* 187 Colo. 248, 529 P.2d 1317 (1975). The proper respondent in a habeas corpus action is the person allegedly restraining the liberty of the petitioner. *People v. Calyer,* 736 P.2d 1204; *Oates v. People,* 136 Colo. 208, 315 P.2d 196 (1957). Velarde's petition for writ of habeas corpus properly named as respondent the sheriff of Fremont County. Although Velarde's appeal names the People of the State of Colorado as the plaintiff-appellant, Velarde appeals the order quashing the writ of habeas corpus and, therefore, the sheriff of Fremont County is the proper respondent-appellee.

failed to comply with the trial court's August 28 order, his "arrest" on August 29 was not valid. On September 5, the court issued a writ of habeas corpus and ordered the respondent, the sheriff of Fremont County, to show cause why Velarde should not be released from custody.

On September 11, a hearing was held on the pending Parolee Supervision Act proceeding and on the defendant's habeas corpus petition. The trial court determined that, pursuant to the Parolee Supervision Act, Velarde was the person wanted in Nevada for parole violations, Velarde was being held legally and the documents supported his return to Nevada in summary fashion. The trial court also quashed Velarde's writ of habeas corpus and ordered his transfer to the custody of Nevada officials if such officials appeared within five days.

Velarde has not appealed the trial court's conclusion that the Parolee Supervision Act governs and that its requirements have been satisfied.[4] Velarde has appealed the trial court's ruling quashing the writ of habeas corpus. The order allowing transfer of Velarde to the custody of Nevada authorities was stayed pending resolution of this appeal.

■ The People's answer brief, while stating that "Colorado courts have not addressed the issues raised by the defendant or the applicability of the [Parolee Supervision Act]," does not directly address any of the defendant's arguments. Rather, the People argue that the appeal should be dismissed because "the defendant is not

entitled to habeas corpus relief at any level in accordance with the [Parolee Supervision Act]." However, the People present no authority for the novel proposition that a person seeking relief from incarceration imposed as the result of allegedly invalid proceedings under the Parolee Supervision Act may not utilize the remedy of habeas corpus to challenge that incarceration. §§ 13-45-101 to -121, 6 C.R.S. (1973 & 1986 Supp.). Other jurisdictions have readily recognized the availability of this remedy, albeit for limited issues, to parolees seeking to challenge the nature and result of proceedings conducted pursuant to the provisions equivalent to those of the Parolee Supervision Act. See, e.g., United States ex rel. Simmons v. Lohman, 228 F.2d 824 (7th Cir.1955); Petition of Mathews, 18 Ohio App.2d 155, 247 N.E.2d 791 (1969); Ex Parte Cantrell, 172 Tex.Crim. 646, 362 S.W.2d 115 (1962); Ogden v. Klundt, 15 Wash.App. 475, 550 P.2d 36 (1976). We conclude that the remedy is available to Velarde.

## II

Velarde contends that he is entitled to release from custody because the requirements of neither the Interstate Agreement on Detainers, §§ 24-60-501 to -507, 10 C.R.S. (1982), nor the Extradition Act were followed by the People. Specifically, he asserts that the district attorney's failure to file a complaint under the Extradition Act required his discharge from custody. Implicit in this argument is the assumption that these statutes apply to Velarde.[5]

4. As noted, the petition for habeas corpus relief underlying this appeal was filed on September 5, 1985. In his petition, Velarde appears to argue either that the trial court lost jurisdiction over the case at 5:00 p.m. on August 29 or that the sheriff was required by the terms of the trial court's August 28 order to release the defendant at 5:00 p.m. on August 29. Resolution of either of these issues requires examination of rulings made by the trial court on August 28 that were subject to further proceedings set for September 11. For example, the question of whether the document filed by the district attorney on August 29 substantially satisfied the trial court's August 28 order, as well as the question of the effect of such document, were issues capable of resolution at the September 11 hearing. It is

thus arguable that the defendant's habeas corpus petition was premature, and that his failure to appeal the trial court's September 11 order not only constitutes a waiver of appellate review of the trial court's ruling regarding the People's motion to proceed under the terms of the Parolee Supevision Act, but also casts doubt on the propriety of the trial court's consideration of his habeas corpus petition. The People have not raised this argument, however.

5. There is no evidence in the record that the warrant for retaking paroled prisoners was ever lodged as a detainer against Velarde in Colorado. The Interstate Agreement on Detainers, §§ 24-60-501 to -507, 10 C.R.S. (1982), prescribes procedures which ensure speedy disposi-

■ Velarde was released from prison in Nevada and permitted to live in Colorado according to the terms of the Parolee Supervision Act and the Nevada equivalent. Such statutes facilitate a parolee's rehabilitation and reintegration into society by permitting the parolee to be supervised by authorities in a state where the individual has employment, where family members live or where other stabilizing influences are present. §§ 24–60–302(1), –303(1). By the express terms of its Parolee Supervision Act, Colorado has agreed to waive all state extradition proceeding requirements for parolees being supervised under the act. §§ 24–60–302(3), –303(3). Such waiver has been authorized by Congress and does not violate article IV, section 2, clause 2, of the United States Constitution. 18 U.S.C. § 112 (1982); *Ex Parte Tenner*, 20 Cal.2d 670, 128 P.2d 338 (1942); *see also United States ex rel. Simmons v. Lohman*, 228 F.2d 824 (7th Cir.1955). Furthermore, as part of his written agreement with Nevada authorities to serve his parole in Colorado, Velarde agreed to waive his rights to extradition proceedings. It is well-established that this waiver violates no constitutional rights of Velarde and is enforceable by Colorado's courts. *See, e.g., State ex rel. Morris v. Tahash*, 262 Minn. 562, 115 N.W.2d 676 (1962); *State v. Maglio*, 189 N.J.Super. 257, 459 A.2d 1209 (1983); *Commonwealth v. Kaminsky*, 206 Pa.Super. 480, 214 A.2d 251 (1965); *State ex rel. Niederer v. Cady*, 72 Wis.2d 311, 240 N.W.2d 626 (1976). In view of these circumstances, Velarde's argument that extradition proceedings must be initiated to return him to Nevada is not tenable.

■ We also conclude that Velarde is not entitled to insist upon utilization of the Extradition Act merely because he was initially advised of his rights under that act. On July 1, 1985, the People declared an intention to proceed under the Parolee Su-

pervision Act and, on July 15, filed a motion to authorize such proceedings. The trial court granted that motion on August 28, 1985, and Velarde has not challenged that ruling. The People had discretion to institute proceedings against Velarde under the Parolee Supervision Act at any time; that discretion was not abrogated by the initial decision to commence extradition proceedings. *In re Jerrell*, 77 S.D. 487, 93 N.W.2d 614 (1958) (state can abandon at any time efforts under extradition act and proceed under parolee supervision act); *see also Ogden v. Klundt*, 15 Wash.App. 475, 550 P.2d 36 (1976).

■ After Velarde completed his Colorado sentence, Colorado, having previously received notice from Nevada that Velarde was to be returned, had the right to take custody of and detain Velarde for a reasonable period necessary for Nevada authorities to appear and take custody of him. *See, e.g., United States ex rel. Simmons v. Lohman*, 228 F.2d 824 (7th Cir.1955); *Petition of Mathews*, 18 Ohio App.2d 155, 247 N.E.2d 791 (1969); *Ex Parte Cantrell*, 172 Tex.Crim. 646, 362 S.W.2d 115 (1962); *Ogden v. Klundt*, 15 Wash.App. 475, 550 P.2d 36 (1976); *see also* §§ 24–60–302(2), –303(2) (supervision of out-of-state parolees under Parolee Supervision Act governed by same standards as supervision of Colorado parolees); § 17–2–103, 8A C.R.S. (1986) (Colorado parolee may be arrested and detained for violation of parole conditions). The trial court properly conducted an evidentiary hearing to determine whether Nevada's request was genuine, whether Nevada had authority over Velarde and whether Velarde was the individual sought by Nevada. *See In re Albright*, 129 Cal.App.3d 504, 181 Cal.Rptr. 84 (1982); *see also Woods v. State*, 264 Ala. 315, 87 So.2d 633 (1956); *Rider v. McLeod*, 323 P.2d 741 (Okla.Crim. App.1958). Velarde does not assert that this procedure failed to satisfy due process

tion of untried indictments, informations or complaints which form the basis for detainers. Because there were no untried criminal charges forming the basis for a detainer, Velarde was entitled to none of the benefits of the Interstate Agreement on Detainers. *Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516

(1985); *see also People v. Jackson*, 626 P.2d 723 (Colo.App.1981). Furthermore, because Nevada was entitled to regain custody of Velarde under the Parolee Supervision Act, there was no requirement that a detainer be lodged against him.

requirements of the United States and Colorado Constitutions, *see Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972) (revocation of parole deprives parolee of "conditional liberty"), or that the trial court's conclusions were in error. The district attorney's failure to file a fugitive complaint on August 29—the filing of which, of course, would have been contrary to the People's decision *not* to commence extradition proceedings—did not affect the validity of the Parolee Supervision Act proceedings already instituted.[6] Under these circumstances, the trial court did not err in quashing the writ of habeas corpus and ordering Velarde transferred to the custody of Nevada officials.

For the foregoing reasons, the order of the trial court is affirmed.

---

**6.** We express no opinion as to whether the document filed was appropriate as to form or even necessary for purposes of proceedings under the Parolee Supervision Act. Velarde does not contend that he did not have adequate notice on August 28, 1985, that the People were thenceforth proceeding under that act.